# EXHIBIT 1

# EXHIBIT 1

1  COMP
   Griffith H. Hayes, Esq.
2  Nevada Bar No. 7374
   Martin A. Muckleroy, Esq.
3  Nevada Bar No. 9634
   **COOKSEY, TOOLEN, GAGE, DUFFY & WOOG**
4  A Professional Corporation
   3930 Howard Hughes Parkway, Suite 200
5  Las Vegas, Nevada 89169
   Telephone: (702) 949-3100
6  Facsimile: (702) 949-3104

7  STULL, STULL & BRODY
   AARON BRODY
8  6 East 45th Street
9  New York, NY 10017
   Telephone: (212) 687-7230
10 Facsimile: (212) 490-2022

11 WEISS & LURIE
12 JOSEPH H. WEISS
   551 Fifth Avenue
13 New York, NY 10176
   Telephone: (212) 682-3025
14 Facsimile: (212) 682-3010

15 *Attorneys for Plaintiff*

16
          EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA
17                  IN AND FOR THE COUNTY OF CLARK

18 
   ROBERT E. GUZMAN, Individually and on       ) Case No.   602440
19 behalf of all others similarly situated,    )
                                               ) Dept No.   1
20                  Plaintiff,                 )
                                               ) Kenneth Cory
21        v.                                   )
                                               )
22                                             )
   SINOENERGY CORPORATION, TIANZHOU            ) CLASS ACTION COMPLAINT
23 DENG, XIANG DONG YANG, BO HUANG,            )
   ROBERT ADLER, RENJIE LU, GREG               ) **JURY TRIAL DEMANDED**
24 MARCINKOWSKI, BAOHENG SHI, and              )
   SKYWIDE CAPITAL MANAGEMENT                  )
25 LIMITED,                                    )
                                               )
26                  Defendants.                )

27

28

RECEIVED IN
EXPRESS BOX

2009 OCT 26 P 6:53

FILED AFTER HOURS
OCT 2 6 2009
STEVEN D. GRIERSON
CLERK OF THE COURT

400.0000 1035801.1

Plaintiff, by his undersigned attorneys, for his class action complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based, *inter alia*, upon the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this shareholder class action on behalf himself and all other public shareholders of Sinoenergy Corporation ("Sinoenergy" or the "Company"), against the Company and its Board of Directors (the "Board" or "Individual Defendants"), arising out of a transaction in which Skywide Capital Management Limited ("Skywide"), the Company's largest shareholder, will acquire each common share of Sinoenergy for $1.90 per share in cash or aggregate consideration of approximately $30.3 million (the "Proposed Transaction").

2. In approving the Proposed Transaction, the Individual Defendants breached their fiduciary duties of loyalty, good faith, and due care to Sinoenergy's shareholders by, *inter alia*, (i) agreeing to sell Sinoenergy without first taking steps to ensure that Plaintiff and Class members (defined below) would obtain adequate, fair, and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or Skywide without regard for Sinoenergy's public shareholders. As alleged herein, Skywide aided and abetted the Individual Defendants' breaches of fiduciary duty. Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Sinoenergy's shareholders, or, alternatively, to rescind the Proposed Transaction in the event Defendants are able to consummate it.

## THE PARTIES

3. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Sinoenergy common stock.

4. Sinoenergy is a corporate entity organized and existing under the laws of the State of Nevada. The Company maintains its principal executive offices in Beijing, China. Sinoenergy, together with its subsidiaries, engages in the design and manufacture of pressure containers, and compressed natural gas (CNG) facilities and equipment in the People's Republic of China. It manufactures and sells customized pressure containers to companies in various

400.0000 1035801.1

industries, including the petroleum, chemical, metallurgy, electricity generation, and beverage. The Company also manufactures, sells, and installs CNG vehicle and gas station equipment, including CNG trailers for mobile distribution, CNG deposited system for gas station usage, CNG compressor skid, and CNG dispenser to other companies that operate CNG stations. In addition, it involves in the design, construction, and equipping of CNG stations; the operation of stations; and the storage, transportation, and distribution of CNG. Further, the Company manufactures CNG vehicle conversion kits and electronic control devices that enable vehicles manufactured for gasoline to operate on CNG. Additionally, it offers petroleum refinery equipment and petroleum machinery; and technical consulting services in CNG filling station construction, and manufacturing of CNG vehicle conversion kits. Sinoenergy's common stock trades on the NASDAQ under the ticker "SNEN." As of August 12, 2009, there were 15,942,336 shares of Company stock outstanding.

5. Defendant Tianzhou Deng ("Tianzhou") has been Chairman and a Sinoenergy director since the completion of the Company's reverse acquisition in June 2006. Tianzhou also co-owns Skywide with Defendant Bo Huang (Huang"). Furthermore, Tianzhou co-founded Sinogas with Huang. Tianzhou also previously served as President and a director of Beijing Tricycle Technology Development Co., Ltd. from 1999 through 2001.

6. Defendant Huang has been Chief Executive Officer of the Company and a Sinoenergy director since the completion of the Company's reverse acquisition in June 2006. Huang also co-owns Skywide with Defendant Tianzhou. Furthermore, Huang co-founded Sinogas with Tianzhou and has been its CEO and Chairman of the Board since 2005. Huang also previously served as President of Beijing Tricycle Technology Development Co., Ltd. from 2003 through 2005, where Tianzhou was also President and a director from 1999 through 2001.

7. Defendant Robert Adler ("Adler") has been a Sinoenergy director since July 2006.

8. Defendant Renjie Lu ("Lu") has been a Sinoenergy director since June 2006.

9. Defendant Greg Marcinkowski ("Marcinkowski") has been a Sinoenergy director since July 2006.

400.0000 1035801.1

10. Defendant Baoheng Shi ("Shi") has been a Sinoenergy director since July 2006.

11. Defendant Xiang Dong Yang ("Yang") has been a Sinoenergy director since May 2008.

12. Defendant Skywide is a limited liability company organized under the laws of the British Virgin Islands. Skywide is co-owned by Defendants Tianzhou and Huang. Moreover, Skywide is Sinoenergy's largest shareholder with control over approximately 39.06% of the Company's outstanding common stock.

13. The Defendants identified in ¶¶ 5-11 are collectively referred to herein as the "Individual Defendants."

14. By reason of their positions as officers and/or directors of the Company, the Individual Defendants are in a fiduciary relationship with Plaintiff and the other public shareholders of Sinoenergy, and owe Plaintiff and Sinoenergy's other shareholders the highest obligations of loyalty, good faith, fair dealing, due care, and full and fair disclosure.

15. Each of the Individual Defendants at all relevant times had the power to control and direct Sinoenergy to engage in the misconduct alleged herein. The Individual Defendants' fiduciary obligations required them to act in the best interest of Plaintiff and all Sinoenergy shareholders.

16. Each of the Individual Defendants owes fiduciary duties of good faith, fair dealing, loyalty, candor, and due care to Plaintiff and the other members of the Class, and is acting in concert with the other Individual Defendants in violating the fiduciary duties as alleged herein, and, specifically, in connection with the Proposed Transaction.

**CLASS ACTION ALLEGATIONS**

17. Plaintiff brings this action on his own behalf and as a class action, pursuant to Nevada Rule of Civil Procedure 23, on behalf of himself and all other public shareholders of Sinoenergy (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

18. This action is properly maintainable as a class action.

19.     The Class is so numerous that joinder of all members is impracticable. As of August 12, 2009, there were 15,942,336 shares of Sinoenergy common stock outstanding, held by hundreds or thousands of individuals and entities scattered throughout the country.

20.     Questions of law and fact are common to the Class, including, among others:

a.      Whether Defendants have breached their fiduciary duties owed to Plaintiff and the Class; and

b.      Whether Defendants will irreparably harm Plaintiff and the other members of the Class if Defendants' conduct complained of herein continues.

21.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

22.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

23.     Defendants have acted, or refused to act, on grounds generally applicable, and causing injury to the Class and, therefore, final injunctive relief on behalf of the Class as a whole is appropriate.

## SUBSTANTIVE ALLEGATIONS

24.     On August 14, 2009, Sinoenergy filed its SEC Form 10-Q, announcing, among other things, increased net sales for the nine months ended June 30, 2009 of $30.6 million, representing an increase of approximately $3.9 million, or 14%, from sales of approximately $26.7 million for the nine months ended June 30, 2008. The Company attributed an increase of

5

approximately $12.8 million due to the expansion of Sinoenergy's CNG station operations. Whereas Sinoenergy had only one CNG station in operation in the nine months ended June 30, 2008, the Company increased the number of stations to 21 stations as of June 30, 2009.

25.  For the week of August 10, 2009 through August 14, 2009, the price of the Company's common stock traded at levels of up to $2.63 per share.

26.  On October 12, 2009, Sinoenergy issued a press release wherein it announced it had entered into an agreement for Skywide to acquire the remaining shares of the Company's common stock that Skywide does not already own for $1.90 per share in cash or approximately $30.3 million in the aggregate.

27.  The consideration to be paid to Plaintiff and the Class in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of Sinoenergy is materially in excess of the amount offered in the Proposed Transaction, giving due consideration to the Company's anticipated operating results, net asset value, cash flow profitability, and established markets.

28.  The Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, as well as its future growth in profits and earnings, at a time when the Company is poised to increase its profitability.

29.  As a result, Defendants have breached the fiduciary duties they owe to the Company's public shareholders because the shareholders will not receive adequate or fair value for their Sinoenergy common shares in the Proposed Transaction.

30.  Moreover, to the detriment of Sinoenergy's shareholders, the terms of the Agreement and Plan of Merger among Sinoenergy and Skywide (the "Merger Agreement") substantially favor Skywide and are calculated to unreasonably dissuade potential suitors from making competing offers.

31.  The Individual Defendants have agreed to have agreed to a "No Solicitation" provision in Section 7.1 of the Merger Agreement that unfairly restricts the Board from soliciting alternative proposals by, among other things, constraining its ability to communicate

with potential buyers, and in some circumstances, even consider competing proposals. This provision also prohibits the Individual Defendants from initiating contact with possible buyers, even if the Board believes that communicating with a potential bidder could reasonably lead to a superior offer or an offer more closely aligned with the interests of Sinoenergy's shareholders. Section 7.1(a) of the Merger Agreement states:

> (a) No Solicitation or Negotiation. Except as expressly permitted in this Section 7.1, *the Company shall not, nor shall it authorize or permit* any of its Subsidiaries or any of its or their directors, officers, employees, investment bankers, attorneys, accountants or other advisors or representatives (such directors, officers, employees, investment bankers, attorneys, accountants, other advisors and representatives, collectively, "Representatives") to directly or indirectly:
>
> *(i) solicit, initiate, encourage or take any other action to facilitate any inquiries or the making of any proposal or offer that constitutes, or could reasonably be expected to lead to, any Acquisition Proposal, including without limitation, amending or granting any waiver or release under any standstill or similar agreement with respect to any Shares;*
>
> *(ii) enter into, continue or otherwise participate in any discussions or negotiations regarding, furnish to any Person any information with respect to, assist or participate in any effort or attempt by any Person with respect to, or otherwise cooperate in any way with, any Acquisition Proposal; or*
>
> *(iii) make or authorize any statement, recommendation or solicitation in support of any Acquisition Proposal.*

[Emphasis added].

32.     Section 7.1 of the Merger Agreement also requires Sinoenergy to notify Skywide of any potential alternative "Acquisition Proposal" received by Sinoenergy. This notice requirement allows Skywide to counter any "Superior Proposal" or alternative "Acquisition Proposal." Furthermore, section 7.1 of the Merger Agreement also states that Sinoenergy must notify Skywide of any proposals, offers, or any overtures of interest from other potential suitors and it must provide the identity of those potential suitors. Sections 7.1(b)(i) and (ii) of the Merger Agreement state, in relevant part:

> *(i) the Company shall (A) promptly (and in no event later than 48 hours after receipt of an Acquisition Proposal) notify (which notice shall be provided orally*

7

*and in writing and shall identify the Person making the Acquisition Proposal and set forth in reasonable detail its material terms and conditions) the Buyer that it has received an Acquisition Proposal and thereafter shall keep the Buyer reasonably informed of the status and material terms and conditions of any proposals or offers*; and (B) make available to the Buyer (to the extent it has not already done so) all material non-public information made available to any Person making an Acquisition Proposal at substantially the same time as it provides it to such other Person; and

(ii) if the Company Board determines in good faith, after consultation with its financial advisors and outside legal counsel, in response to such bona fide written Acquisition Proposal, that such proposal is a Superior Proposal and that terminating this Agreement to accept such Superior Proposal and/or recommending such Superior Proposal to the shareholders of the Company is necessary in order for the Company Board to comply with its fiduciary duties under applicable Law, the Company may terminate this Agreement and/or the Company Board may approve or recommend such Superior Proposal to its shareholders, and immediately prior to or concurrently with the termination of this Agreement, enter into any agreement, understanding, letter of intent or arrangement with respect to such Superior Proposal, as applicable; provided, however, that the Company shall not terminate this Agreement pursuant to this sentence, and any purported termination pursuant to this sentence shall be void and of no force or effect, unless concurrently with such termination pursuant to this Section 7.1(b)(ii) the Company pays to the Buyer the Termination Fee payable pursuant to Section 9.3(b); and provided, *further, however, that the Company shall not exercise its right to terminate this Agreement and the Company Board shall not recommend a Superior Proposal to its shareholders pursuant to this Section 7.1(b) unless the Company shall have delivered to the Buyer a prior written notice advising the Buyer that the Company or the Company Board intends to take such action with respect to a Superior Proposal, specifying in reasonable detail the material terms and conditions of the Superior Proposal, this notice to be delivered not less than three Business Days prior to the time the action is taken, and, during this three Business Day period, the Company and its advisors shall negotiate in good faith with the Buyer to make such adjustments in the terms and conditions of this Agreement such that such Acquisition Proposal would no longer constitute a Superior Proposal.*

[Emphasis added].

33.  Section 9.3 of the Merger Agreement also contains a termination fee of $500,000 ("Termination Fee"), approximately 1.7% of the approximately $30.3 million offering price, as another deal protection device. Moreover, it appears that the Termination Fee is payable even in the event the Board terminates the Merger Agreement pursuant to the lawful exercise of its

8

fiduciary duty, which reinforces the notion that the Termination Fee is an improper deterrent to the Board's seeking the best possible price for Sinoenergy's shareholders.

34. The Proposed Transaction is grossly unfair to the Class, and the gross disparity between the knowledge and information possessed by Tianzhou, Huang, and the other Individual Defendants by virtue of their positions at Sinoenergy and that possessed by the Company's public shareholders compounds this unfairness. Tianzhou and Huang are unfairly using this inside information to benefit themselves, all to the detriment of the Company's public shareholders.

35. Moreover, Tianzhou and Huang have timed the Proposed Transaction to freeze out Sinoenergy's public shareholders and to capture for themselves the Company's future potential without paying an adequate or fair price. Indeed, according to *Yahoo! Finance*, at least one analyst has a median target of $9.90 per share for Sinoenergy.

36. These acts, combined with other defensive measures the Company has in place, effectively preclude any other bidders who might be interested in paying more than Skywide for the Company, and have the effect of limiting the ability of the Company's stockholders to obtain the best price for their shares.

## COUNT I

**(Breach of Fiduciary Duty against the Individual Defendants)**

37. Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

38. As members of the Company's board of directors, the Individual Defendants have fiduciary obligations to: (a) undertake an appropriate evaluation of Sinoenergy's net worth as a merger/acquisition candidate; (b) take all appropriate steps to enhance Sinoenergy's value and attractiveness as a merger/acquisition candidate; (c) act independently to protect the interests of the Company's public shareholders; (d) adequately ensure that no conflicts of interest exist between the Individual Defendants' own interests and their fiduciary obligations, and, if such conflicts exist, to ensure that all conflicts are resolved in the best interests of Sinoenergy's public shareholders; (e) actively evaluate the Proposed Transaction and engage in

9

a meaningful auction with third parties in an attempt to obtain the best value on any sale of Sinoenergy; and (f) disclose all material information in soliciting shareholder approval of the Proposed Transaction.

39. The Individual Defendants have breached their fiduciary duties to Plaintiff and the Class.

40. As alleged herein, the Individual Defendants have initiated a process to sell Sinoenergy that undervalues the Company and vests them with benefits that are not shared equally by Sinoenergy's public shareholders. In addition, by agreeing to the Proposed Transaction, the Individual Defendants have capped the price of Sinoenergy at a price that does not adequately reflect the Company's true value. The Individual Defendants also failed to sufficiently inform themselves of Sinoenergy's value, or disregarded the true value of the Company, in an effort to benefit themselves. Furthermore, any alternate acquirer will be faced with engaging in discussions with a management team and board that is committed to the Proposed Transaction.

41. As such, unless the Individual Defendants' conduct is enjoined by the Court, they will continue to breach their fiduciary duties to Plaintiff and the other members of the Class, and will further a process that inhibits the maximization of shareholder value.

42. Plaintiff and the members of the Class have no adequate remedy at law.

## COUNT II

### (Aiding and Abetting the Board's Breaches of Fiduciary Duty against Sinoenergy and Skywide)

43. Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

44. Defendants Sinoenergy and Skywide knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Transaction, which, without such aid, would not have occurred. In connection with discussions regarding the Proposed Transaction, Sinoenergy provided, and Skywide obtained, sensitive non-public

information concerning Sinoenergy's operations and thus had unfair advantages which enabled it to acquire the Company at an unfair and inadequate price.

46. As a result of this conduct, Plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their ACPT shares.

46. Plaintiff and the members of the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against the Defendants as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative;

B. Preliminarily and permanently enjoining Defendants, and all persons acting in concert with them, from proceeding with, consummating, or closing the Proposed Transaction;

C. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D. Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

400.0000 1035801.1

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all claims and issues so triable.

DATED: October 26, 2009

Respectfully submitted,
**COOKSEY, TOOLEN, GAGE, DUFFY & WOOG**

Griffith H. Hayes, Esq.
Nevada Bar No. 7374
Martin A. Muckleroy, Esq.
Nevada Bar No. 9634
3930 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169
Telephone: (702) 949-3100
Facsimile: (702) 949-3104

*Attorneys for Plaintiff*

OF COUNSEL:

STULL, STULL & BRODY
AARON BRODY
6 East 45th Street
New York, NY 10017
Telephone: (212) 687-7230
Facsimile: (212) 490-2022

WEISS & LURIE
JOSEPH H. WEISS
551 Fifth Avenue
New York, NY 10176
Telephone: (212) 682-3025
Facsimile: (212) 682-3010